UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 17 CR 382-1 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| JAMAR CURSE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Chicago Police Department ("CPD") officers arrested Defendant Jamar Curse and searched his person and his car, recovering a semi-automatic pistol, fourteen bags of a substance suspected to be crack cocaine, and $1,061.00. Doc. 85-1 at 2. Curse was charged with firearm and drug offenses, Doc. 1, and now moves to suppress that evidence, Doc. 80.

The police reports recount the following. In the afternoon of January 19, 2017, a CPD informant called a number on speakerphone in the presence of an undercover CPD officer, Officer Syas. Doc. 85-1 at 6. The man who answered the phone asked, "What you need?"; the informant responded, "A couple"; and they arranged to meet. *Ibid*. The informant and Officer Syas drove to the 9100 block of Houston Avenue. *Id*. at 3, 6. Another CPD officer, Officer Fleming, conducted surveillance nearby. *Id*. at 3. The officers observed a light brown Jeep with a single male occupant drive northbound on Houston. *Id*. at 3, 6. The informant told Officer Syas that the person in the Jeep was "his guy." *Id*. at 6. Officer Syas gave $50 to the informant, who walked over to the Jeep. *Ibid*. Officer Fleming observed the informant enter the Jeep. *Id*. at 3. The Jeep then drove northbound on Houston, made a U-turn, and drove back toward the officers. *Id*. at 3, 6. The informant got out of the Jeep and entered Officer Syas's car. *Ibid*. The

1

informant handed Officer Syas two bags containing a substance suspected to be crack cocaine. *Id*. at 6. No CPD officer witnessed the informant buy the alleged crack from Curse.

Officer Syas drove away with the informant, while Officer Fleming continued to follow the Jeep. *Id*. at 3, 6. The Jeep drove to 9006 South Mackinaw Avenue and parked in a vacant lot. *Id*. at 3. A man later identified as Curse exited the driver's side door, retrieved a towel from the passenger side door, and began wiping down a second car that was already in the lot. *Ibid*. Officer Fleming radioed two other CPD officers, who drove to the lot. *Ibid*. The officers arrested Curse, searched his car, and, after transporting him to the police station, searched his person. The searches yielded the drugs, the money, and the pistol Curse now seeks to suppress. Doc. 85-1 at 3; Doc. 85-2.

Curse submits that an evidentiary hearing would reveal three additional sets of facts. First, Curse would testify why he was at the vacant lot—he had arranged to meet a friend to examine and move several cars that he stored there. Doc. 80 at 1. Curse would further testify that when he and his friend were checking the VIN numbers on the cars, two CPD officers pulled into the lot and told Curse and the friend to put their hands up, stating that they had received a tip that the cars were stolen. *Id*. at 1-2. Curse told the officers that he had the keys and titles to all the cars in the lot, but the officers arrested him and his friend and searched both of their cars, and then took Curse to the police station and searched his person. *Id*. at 2.

Second, Curse would offer into evidence a CPD video recording of the alleged controlled buy. That video shows the informant walking toward a stopped Jeep. The camera's view of the passenger side door is obstructed, however, so the video does not show the informant enter the Jeep. The video ends after the Jeep pulls away from the curb. Doc. 80 at 3-4.

Third, Curse's attorney argued at the motion hearing that other evidence casts doubt on the officers' credibility. The attorney stated that he "thinks" there were discrepancies in the officers' police reports, though he did not have the reports with him at the hearing and could not identify the discrepancies. The attorney further argued that the video does not reflect where Officer Fleming was located when the informant entered the Jeep and whether his view was obstructed at that time, leaving it unclear whether he could in fact have seen the informant get into the car.

Curse moves to suppress the incriminating evidence or, in the alternative, for an evidentiary hearing. Subject to certain exceptions, fruits of an unlawful arrest must be suppressed. *See United States v. Slone*, 636 F.3d 845, 848 (7th Cir. 2011). "[T]he government [bears] the burden of proving by a preponderance of the evidence … that an exception to the warrant requirement applied." *United States v. Stewart*, 902 F.3d 664, 674 (7th Cir. 2018). "An officer may make a warrantless arrest consistent with the Fourth Amendment if there is probable cause to believe that a crime has been committed." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (internal quotation marks and brackets omitted). "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Rainsberger v. Benner*, 913 F.3d 640, 648 (7th Cir. 2019). Curse seeks suppression on the sole ground that the gun, drugs, and money are fruits of a warrantless arrest without probable cause. Any other argument for suppression is forfeited. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *see also Arizona v. Gant*, 556 U.S. 332, 339 (2009) (describing the search-incident-to-arrest exception to the warrant

requirement); *United States v. Paige*, 870 F.3d 693, 702 (7th Cir. 2017) (explaining how the search-incident-to-arrest exception applies to vehicles and describing the automobile exception).

The officers had probable cause to arrest Curse. The police reports reflect that: (1) the informant called an unknown person, who agreed to meet him on Houston Avenue and supply him with "two" of something; (2) on arriving on Houston Avenue, the informant pointed to a Jeep with one person inside and said that "his guy" was in the Jeep; (3) the informant walked over to the Jeep and got inside; (4) the car drove down the street, made a U-turn, and drove back up the street; (5) the informant emerged from the Jeep with two bags containing a substance that appeared to be crack cocaine; (6) Officer Fleming followed the Jeep; and (7) Officer Fleming saw Curse emerge from the Jeep. If true, these facts would "warrant a prudent person to believe criminal conduct has occurred"—a crack cocaine transaction—and that Curse had committed that conduct. *Rainsberger*, 913 F.3d at 648; *see also see United States v. Haynes*, 882 F.3d 662, 666 (7th Cir. 2018) ("A properly executed controlled buy can establish probable cause."); *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006) (holding that there was probable cause to believe that a drug transaction had occurred in an apartment building where "the confidential informant entered the building without contraband [and,] exiting moments later, he produced cocaine").

Contrary to Curse's arguments, Doc. 80 at 5; Doc. 86 at 1, 3, the officers had probable cause to arrest him even though the officers themselves did not witness the drug transaction. Probable cause can be based on circumstantial evidence. *See Howard*, 883 F.3d at 708 (holding that there was probable cause to arrest suspects in a Mercedes where the "police did not *know* the occupants of the Mercedes were involved in [a] robbery," but "the circumstances were such that an officer could reasonably infer their participation"); *United States v. Edwards*, 519 F. App'x

411, 414 (7th Cir. 2013) ("Deputy Pollock could reasonably rely on circumstantial evidence …

to conclude that Edwards recently operated [a] vehicle while under the influence of marijuana.

That reasonable belief, rather than certainty, is all that probable cause requires.") (internal

citations omitted).  Moreover, the Seventh Circuit has repeatedly held that facts and

circumstances consistent with drug distribution can create probable cause even if no police

officer observes a drug transaction.  *See United States v. Fifer*, 863 F.3d 759, 764 (7th Cir. 2017)

(holding that police officers had probable cause to search a suspect's home after they executed a

controlled buy with a confidential informant, even though the officers did not witness the

transaction); *United States v. Miller*, 654 F. App'x 839, 843 (7th Cir. 2016) ("[T]he absence of

constant visual contact with the informant conducting the transaction does not render a

controlled purchase insufficient, nor does the absence of an audio-recording of the transaction.")

(quoting *United States v. Artez*, 389 F.3d 1106, 1111-12 (10th Cir. 2004)); *United States v.

Bennett*, 454 F. App'x 509, 512 (7th Cir. 2011) ("Although the agents did not actually observe a

hand-to-hand transfer, the behavior of Bennett and Atkins was consistent with such a transfer.

This court has found similar conduct to support a finding of probable cause and we see no reason

to deviate from this interpretation."); *United States v. Daniels*, 405 F. App'x 54, 57 (7th Cir.

2010) (affirming a conviction for a drug crime even though "the video recordings do not show an

exchange of drugs for money"); *United States v. Funches*, 327 F.3d 582, 586-87 (7th Cir. 2003)

(holding that there was probable cause to arrest the defendant for a drug crime based on

circumstantial evidence); *United States v. Schumpert*, 958 F.2d 770, 773 (7th Cir. 1992) (same).

This conclusion holds even if, as Curse suggests, the officers did not directly observe the

informant enter Curse's car.  Doc. 86 at 1-2.  An officer need not directly observe an informant

enter the site of a controlled buy to reasonably conclude that a drug transaction has occurred.

*See Sidwell*, 440 F.3d at 869 ("[The defendant] … submits that the buy was not actually

'controlled' because the police were unable to see the confidential informant after he entered the

apartment building.  Therefore, he submits, the informant could have purchased the cocaine from

any person in any unit in that building. This scenario is theoretically possible. Nevertheless, it

does not negate the existence of probable cause.").  The court also rejects Curse's argument that

the officers' failure to video record all the events surrounding the controlled buy calls their

credibility into question.  *See United States v. Salas*, 756 F.3d 1196, 1201-02 (10th Cir. 2014)

("Salas is correct [that] the video does not show the fog line violations.  But Gragg testified that

all of the traffic violations occurred before the video began recording, which explains their

absence from the footage."); *Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007) ("Even though

the video does not affirmatively show Mann placing a hand on Officer Schindler's gun, and does

not clearly depict the extent of Mann's resistance, the video does not visibly contradict the

officers' version of events. The officers' account, then, is not contested by any credible

evidence."); *United States v. Zubia-Melendez*, 263 F.3d 1155, 1160 (10th Cir. 2001) (affirming

the district court's determination that an officer was credible where the traffic infraction to which

he testified was not caught on video, but where the available video evidence did not contradict

the officer's testimony); *United States v. Gillyard*, 261 F.3d 506, 509 (5th Cir. 2001) (holding

that the district court could conclude that the testifying officer observed a traffic violation even

though the violation was not caught on video); *see also United States v. Garza*, 730 F. App'x

258, 259 (5th Cir. 2018) (similar); *United States v. Braswell*, 704 F. App'x 528, 533 (6th Cir.

2017) (similar); *United States v. Douglas*, 637 F. App'x 911, 915-16 (6th Cir. 2016) (similar);

*United States v. Linker*, 510 F. App'x 900, 904 (11th Cir. 2013) (similar); *United States v.*

*Andrews*, 409 F. App'x 241, 242 (11th Cir. 2010) (similar); *United States v. Gonzalez*, 383 F. App'x 933, 935 (11th Cir. 2010) (similar).

Curse's attorney's argument at the hearing that there are discrepancies in the police reports is undeveloped and therefore forfeited. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived … ."); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("[A]s the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped."). Finally, Curse's arguments concerning the events at the vacant lot, Doc. 80 at 4-6; Doc. 86 at 2-3, miss the mark because they do not call into question the officers' account of the controlled buy, and thus do not undermine the court's conclusion that the officers had probable cause to arrest Curse.

The court addresses two matters before concluding. First, in resolving Curse's motion to suppress, the court relied on hearsay statements in police reports. This is permitted under settled precedent. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."); *Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010) ("[P]robable cause to arrest can rest upon information that would not be admissible at trial, such as hearsay, if the information is supported by some indicia of reliability."); *United States v. Bolin*, 514 F.2d 554, 557 (7th Cir. 1975) ("[I]t is clear that hearsay evidence is admissible in a hearing on a motion to suppress.").

Second, Curse is not entitled to an evidentiary hearing. As the Seventh Circuit has held:

> District courts are required to conduct evidentiary hearings only when a
> substantial claim is presented and there are disputed issues of material fact
> that will affect the outcome of the motion. To obtain an evidentiary hearing
> relating to suppression of evidence, the defendant bears the burden of making

a prima facie showing of illegality. Reliance on vague, conclusory allegations is insufficient. Instead, the defendant must present definite, specific, detailed, and nonconjectural facts that justify relief.

*United States v. Edgeworth*, 889 F.3d 350, 353-54 (7th Cir. 2018) (internal quotation marks and citations omitted).

Here, there are no material disputes of fact. Curse does not deny that the controlled buy took place or offer any evidence that directly contradicts the officers' version of events. He does attack the officers' credibility and points out that no officer witnessed a crime, but the government does not dispute any of the facts on which he relies: It acknowledges that the officers did not video record the entire encounter, and further acknowledges that none of the officers witnessed the alleged transaction. Moreover, Curse's account of the events in the vacant lot is not material because it does not call into question the officers' belief that Curse had committed a crime on Houston Avenue before arriving at the lot. Whether the officers could see the informant enter Curse's Jeep is likewise immaterial because, as noted above, the officers had probable cause to arrest Curse whether or not they saw the informant enter the Jeep. Finally, Curse's attorney's unsupported assertion that there are discrepancies in the police reports does not constitute "definite, specific, detailed, and nonconjectural facts that justify relief." *Edgeworth*, 889 F.3d at 354.

February 25, 2019

_____
United States District Judge